GREGORY, Circuit Judge,
dissenting:
Today, the majority affirms the district court’s dismissal of Walker’s Brady claim in this capital case only by departing from this Court’s prior decision in Walker II, 195 Fed.Appx. 169 (4th Cir.2006). Having heard Walker II, I disagree with the majority’s interpretation of the case. This Court’s determinations in Walker II that Walker established cause and prejudice to overcome procedural default were disposi-tive of Walker’s Brady claim. Therefore, I respectfully dissent.
I.
It is not Walker, but the majority, that “misreads the scope of Walker II ” (Maj. Op. at 138.) This Court’s decision in Walker II that Walker had established cause and prejudice to overcome procedural default meant that he simultaneously satisfied two of the three components of his Brady claim, and the Court’s other determinations were necessarily disposi-tive of the third component. Therefore, the district court’s decision to disregard this Court’s prior determinations of law and fact violated the law of the case doctrine, or more specifically, the mandate rule.
A.
In Strickler v. Greene, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Supreme Court stated that the elements required to demonstrate procedural default — cause and prejudice — “parallel two of the three components of the alleged Brady violation itself,” namely suppression and prejudice. Accord Banks v. Dretke, *144 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). The Banks decision not only reaffirmed the observation laid out in StHckler, but also elaborated on the overlap between these two tests:
Corresponding to the second Brady component (evidence suppressed by the State), a petitioner shows “cause” when the reason for his failure to develop facts in state-court proceedings was the State’s suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the compass of the “cause and prejudice” requirement exists when the suppressed evidence is “material” for Brady purposes.

Id.

After finding that Walker established cause and prejudice to excuse the procedural default of his Brady claim, Judge Floyd, writing for the majority in Walker II, concluded “that an evidentiary hearing on the merits of [Walker’s] Bianca Brady claim is appropriate,” and thus remanded the case to the district court for an eviden-tiary hearing. 195 Fed.Appx. at 177. As I pointed out in my concurrence, “Walker’s showing of cause and prejudice is not merely sufficient to overcome the procedural default, but also to satisfy the second and third elements of a Brady claim” and ultimately to establish a Brady violation. Id. at 179 (Gregory, J., concurring).
As observed in Banks, a defendant who shows cause and prejudice to excuse a procedural default simultaneously satisfies the second and third elements of a Brady claim — evidence suppressed by the state and prejudice, respectively. See Banks, 540 U.S. at 691, 124 S.Ct. 1256. Without question, the first Brady element — the suppressed evidence is favorable to the accused — is satisfied here. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (setting forth the elements of a Brady claim). Indeed, the undisclosed reports contain powerful impeachment material, which calls into question the veracity of Bianca’s testimony. Thus, I believe that the conclusion that a Brady violation occurred flows from the finding of cause and prejudice.
Id. (Gregory, J., concurring).
Even the dissent indicated that Judge Floyd’s conclusion as to Walker’s showing of cause and prejudice “means that Walker has satisfied two of the three elements of a successful Brady claim,” suppression and prejudice. Id. at 184 n. 4 (Williams, J., dissenting).
The majority therefore remands for the district court to determine only whether Walker has shown the third element of a Brady claim; that is, that “the evidence at issue is favorable to [Walker], either because it is exculpatory or because it is impeaching.” Although the majority strangely refrains from addressing this legal question, its statement that “[t]he withheld reports provide persuasive evidence that Bianca did not see the shooter the night of [her father’s] murder,” answers this question in the affirmative. In essence, then, as suggested by Judge Gregory’s concurrence, the majority opinion results in an inevitable grant of Walker’s § 2254 petition.
Id. (Williams, J., dissenting) (internal citations omitted).
Thus, both the concurrence and dissent in Walker II correctly noted that, under StHckler and Banks, Judge Floyd’s majority opinion necessarily meant that Walker had satisfied the suppression and prejudice components of the Brady claim itself. See 195 Fed.Appx. at 179 (Gregory, J., concurring), 184 n. 4 (Williams, J., dissenting). The majority wholly disregards these two opinions, instead altering this Court’s analysis of the facts when the facts have not *145 changed. While the majority affords no weight to the clear views of a majority of the panel members in Walker II on the significance of that case’s holding, surely it does not question the intent of Judge Floyd’s majority opinion. Judge Floyd simply found an evidentiary hearing to be appropriate, providing the Government with an opportunity to produce evidence different on Walker’s Brady claim than what had been shown before this Court. Indeed, the majority states that “[tjhere was no evidence from the Commonwealth ... regarding what information was or was not given to defense counsel on the issues raised.” (Maj. Op. at 138.) Given that no evidence was ultimately presented that was significantly different from that before this Court in Walker II, the district court was not free to depart from this Court’s prior determinations.
At oral argument before this Court, the Warden repeatedly asserted that Walker chose to not put evidence on at the eviden-tiary hearing. This argument is incorrect at best, as Walker did introduce evidence. The argument also demonstrates the affront to fairness that has occurred here. Walker proved his Brady claim before this Court in Walker II. In a light most generous to the Warden, the evidentiary hearing was granted either to allow the Government to bring new evidence to light in order to avoid summary judgment in favor of Walker or to decide only the issue of favorability. However, the effect of the majority’s approach in this case is that Walker was forced to relitigate his claim until the Warden prevailed.
Furthermore, irrespective of the import of the holdings in Strickler and Banks, the express determinations in Walker II conclusively establish the suppression and prejudice components of Walker’s Brady claim. With regard to the suppression component, this Court found that “the prosecution failed to disclose Brady material” when “the Commonwealth knew of, but failed to disclose, police reports that contain evidence which challenges the credibility of Bianca Taylor’s alleged eyewitness testimony.” Walker II, 195 Fed.Appx. at 172. With regard to the prejudice component, this Court concluded that “[gjiven the dearth of physical evidence and the centrality of Bianca’s testimony, the withheld evidence ‘could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.’ ” Id. at 177 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). This conclusion in fact mirrors the governing standard for demonstrating prejudice for purposes of a Brady violation. See Kyles, 514 U.S. at 435, 115 S.Ct. 1555.
WTiile the majority opinion in Walker II did not expressly state that the third component of the Brady claim — favorability— had been demonstrated by Walker, the Court’s findings leave no doubt that the favorability component had been established.* The opinion found that the withheld police reports “contain evidence which challenges the credibility of Bianca Taylor’s alleged eyewitness testimony,” 195 Fed.Appx. at 172, and “provide compelling evidence suggesting that Bianca never saw the intruder the night of the murder and that she based her identification of Walker solely on the intruder’s voice,” id. at 173. The opinion concluded: “As such, the withheld documents would have provided substantial evidence impeaching Bianca’s trial testimony that she saw the person who shot her father.” Id. at 174. According to *146 Strickler, this type of impeachment evidence is, by definition, “favorable to the accused” for purposes of proving a Brady violation. See 527 U.S. at 281-82, 119 S.Ct. 1936.
For its part, the majority modifies the previous determinations made by this Court by claiming that in Walker II, we were merely accepting Walker’s pleadings as true for purposes of determining whether his procedural default was excused, rather than evaluating the facts as would be done for purposes of evaluating the Brady claim itself. The majority even goes so far as to declare that Walker II expressly assumed the truth of Walker’s assertions. This is plainly not the case. The opinion in Walker II never made such assumption, explicitly or implicitly. Instead, the Court “[v]iew[ed] the facts of the case at bar through the lens of Banks.” 195 Fed.Appx. at 172.
In arriving at its interpretation of Walker II, the majority conflates the standard a court uses in ruling on a motion to dismiss with the standard it uses to determine whether a petitioner has put on evidence to overcome procedural default. The Banks decision is particularly instructive in this regard, for as in Banks, the lower court here dismissed Walker’s Brady claim on account of procedural default. See 540 U.S. at 689, 691, 124 S.Ct. 1256. Yet the Banks decision acknowledged that the standard for showing cause and prejudice to excuse procedural default is the same as that for establishing the underlying Brady claim. See id. at 691, 124 S.Ct. 1256 (“[I]f Banks succeeds in demonstrating ‘cause and prejudice,’ he will at the same time succeed in establishing the elements of his ... Brady ... claim.”) Here, while the district court had not held an evidentiary hearing on the issue of procedural default, we reached our decision based on evidence beyond the pleadings, including the affidavits of counsel and police officers involved in the investigation of the Beale murder. Thus, when this Court “[v]iew[ed] the facts of the case at bar through the lens of Banks,” 195 Fed.Appx. at 172, it did not, and indeed could not, view the facts in the light most favorable to Walker.
B.
Because the majority misinterpreted the effect of this Court’s findings and conclusions in Walker II on the merits of Walker’s Brady claim, it failed to determine whether the district court violated the mandate rule by denying Walker’s motion for summary judgment and holding an evi-dentiary hearing on the Brady claim. “Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is ‘controlling as to matters within its compass.’ ” United States v. Bell, 5 F.3d 64, 66 (4th Cir.1993) (quoting Sprague v. Ticonic Nat’l Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)). According to Bell, “[bjecause this mandate rule is merely a specific application of the law of the case doctrine, in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.” Id. (internal quotation marks and citations omitted); see also Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir.1988) (“[T]he [law of the case] doctrine applies both to questions actually decided as well as to those decided by ‘necessary implication’....”). Thus, on remand “a district court must, except in rare circumstances, implement both the letter and spirit of the ... mandate, taking into account [our] opinion and the circumstances it embraces.” Bell, 5 F.3d at 66-67 (alteration in the original) (internal quotation marks *147 and citations omitted). The majority fails to enforce this law.
Even though the majority in Walker II “remanded for an evidentiary hearing on Walker’s Bianca Brady claim,” 195 Fed.Appx. at 177, the district court was bound by the findings and conclusions in that opinion, which by necessary implication required the granting of summary judgment in favor of Walker. Cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir.2007) (concluding that this Court’s determination that defendant could state a claim against plaintiff under a statute necessarily implied that the statute applied to plaintiff, and thus the district court did not err in refusing to allow plaintiff to argue on remand that the statute was inapplicable). “A mandate from [an appellate] court ordering a new trial does not preclude the district court from entering summary judgment if all of the appropriate requirements are met.” Perlmutter v. U.S. Gypsum Co., 54 F.3d 659, 662 (10th Cir.1995) (alteration in the original) (internal quotation marks and citation omitted); Publishers Res., Inc. v. Walker-Davis Pubs., Inc., 762 F.2d 557, 559-60 (7th Cir.1985).
Nor are there “exceptional circumstances” in this case that would compel the district court to disregard our findings and conclusions. The Fourth Circuit has identified three categories of exceptional circumstances: “(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.” Sejman, 845 F.2d at 69 (internal quotation marks and citation omitted); accord United States v. Aramony, 166 F.3d 655, 661 (4th Cir.1999). The second and third of these circumstances are plainly inapplicable here, and thus the only circumstance that could potentially apply is the first: that the subsequent evidentiary hearing produced substantially different evidence on Walker’s Brady claim. But as other courts have recognized, the “substantially different evidence” exception “does not apply where a prior appeal has not left the issue open for decision.” Lyons v. Fisher, 888 F.2d 1071, 1075 (5th Cir.1989) (internal quotation marks and citation omitted); see also United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.1991). That is because “[i]f, by the simple expedient of flaunting the law of the case, a trial court which should have deferred to an appellate court’s resolution of an issue could proceed to address the issue anew, then the doctrine would disappear into thin air.” Rivera-Martinez, 931 F.2d at 151.
Because our opinion in Walker II was dispositive of Walker’s Brady claim, the district court erred in refusing to grant summary judgment in favor of Walker and ultimately denying his habeas petition. Furthermore, even assuming that the evidence adduced at the evidentiary hearing was “substantially different” than the record in Walker II, the “substantially different evidence” exception cannot apply because the district court was foreclosed from relitigating the findings and conclusions of this Court. To reach a different result, the majority modifies previous determinations by this Court, and I must dissent on this basis.
II.
Walker alternatively contends that even if the district court was not strictly bound by the legal determinations of this Court, the district court nevertheless erred in finding that Walker had not established his Brady claim. Specifically, Walker contends that “[t]he factual record developed at the evidentiary hearing in district court *148 did not differ in any material way from the factual record before this Court when it concluded that the prosecution suppressed material, favorable evidence.” (Petr.’s Br. 38.) Given this, Walker argues that the district court was not free to come to the opposite legal conclusions as those reached by this Court. The majority dismisses this argument in one brief paragraph, maintaining that there was no previous merits determination by this Court and that Walker’s argument “subverts the burden of proof.”
First, as discussed above, there was a previous merits determination by this Court in Walker II on Walker’s Brady claim. Second, Walker’s argument does not shift the burden of proof. Rather, Walker simply sets out an application of the law of the case doctrine, which the majority does not address. Instead, the majority charts a new course and concludes that the findings and decision of the district court were fully supported by the record.
In essence, Walker’s argument is a specific application of the law of the case doctrine. Other circuits, relying on the law of the case doctrine, have held that a district court is not free to depart from a circuit court’s legal conclusions where the evidence developed at the district court level was “substantially similar” to the evidence considered by the circuit court in a previous appeal. See, e.g., Africa v. City of Philadelphia (In re City of Philadelphia Litig.), 158 F.3d 711, 720-22 (3d Cir.1998); Williams v. City of Dothan, 818 F.2d 755, 757-58 (11th Cir.1987). Based on the Fourth Circuit’s application of the law of the case doctrine as I set out above, this Court should adopt this particular holding as well. Because the evidence before this Court and the district court was “substantially similar” and undoubtedly established all elements of Walker’s Brady claim, the district court erred in denying Walker’s habeas petition. In finding otherwise, the majority advances several arguments which I need not address because each relies on evidence that was considered and rejected by this Court in Walker II.
III.
In this case, the district court violated the mandate rule and erred in its conclusions as to all elements of Walker’s Brady claim. I would, accordingly, reverse the decision of the district court and remand with instructions to issue the writ of habe-as corpus and grant Walker a new trial. I am troubled by the majority’s choice to reject the conclusions previously made by this Court in Walker II. When, as here, actual innocence is at issue in a capital case involving such scant physical corroboration, justice requires that we adhere to the well-established law of the case doctrine and specifically, the mandate rule. Thus, I dissent.

 Both the concurrence and dissent in Walker II recognized that the determinations by the majority opinion necessarily meant that the fa-vorability component had been satisfied. See 195 Fed.Appx. at 179 (Gregory, J., concurring), id. at 184 n. 4 (Williams, J., dissenting).