UNITED STATES of America, Plaintiff,

v.

Jose E. ALEGRIA, Defendant.

No. Crim. 96–0319 (PG).

United States District Court,
D. Puerto Rico.

May 8, 1998.

Jorge E. Vega Pacheco, Asst. U.S. Attorney, Hato Rey, PR, for Plaintiff.

Luis A. Plaza, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

José E. Alegría, doing business as Bankers Finance Mortgage Corp., was indicted on November 27, 1996, for devising a scheme to defraud Citibank and induce it and other financial institutions to purchase mortgages by means of false and fraudulent pretenses, representations or promises. The fraud amounted to over $5,000,000. The defendant pled guilty to the charges on May 14, 1997, having entered into a plea and cooperation agreement with the United States.

On December 30, 1997, the defendant filed a motion under seal notifying "constitutional violation" regarding United States' failure to file a motion for downward departure. (Docket No. 30.) The defendant alleges that he complied fully with the agreement but that the United States has placed him ·on

notice that, notwithstanding the agreement and his cooperation, the United States would not be filing a motion for downward departure under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. The United States is accused of arbitrarily reneging on the agreement in spite of the defendant's substantial cooperation. This reneging is tantamount to a breach of the plea agreement which breach is allegedly a violation of law. *See United States v. Canada,* 960 F.2d 263, 269 (1st Cir.1992). The defendant seeks an evidentiary hearing to prove that the government's arbitrary decision violates the Due Process Clause of the Fifth Amendment.

The United States filed a response to the motion on February 10, 1998. (Docket No. 36.) In its response, the United States notes that the defendant pled guilty to the charges and that a pre-sentence investigation report disclosed that, based upon a Total Base Offense Level of 23, and a Criminal History Category of 1, the defendant is liable to receive a sentence of 46 to 57 months imprisonment.

Consonant with the plea and cooperation agreement, the defendant met with law enforcement agents on May 22 and September 10, 1997. The information given by him having been examined, it was determined that such was not substantial as to merit a downward departure. The information was considered too little and too far removed from the facts. The United States proffers that the defendant provided self-serving rationalizations for his having pled guilty. The defendant would allegedly remove himself from any allegations of purported fraud. For example, he said that on an occasion that he was away from the office for a short time, his employees devised a scheme to defraud Banco Nacional, without his knowledge. Considering his control over his bank, the agents found this incredible. The defendant argues in his reply that the government is wrong in that the bank employees that allegedly committed the fraudulent scheme were his own and that they did so without the knowledge of the Board of Directors. The defendant accuses the government of misconstruing the facts, notes that the agents assigned to the debriefings were not the adequate personnel

to develop a white collar crime case, and believes that the agents and their representations to the prosecutors may be at the core of this dispute.

The defendant proposes that the court conduct an evidentiary hearing so that a record be made of the substantial cooperation and to show that the law enforcement agents gave erroneous advice to the prosecutors. The defendant argues that he has made a sufficient threshold showing that material facts are in dispute so that an evidentiary hearing should be held in order to determine whether the United States can reasonably articulate a valid reason, rationally related to any legitimate governmental end, to decline filing the section 5K1.1 motion. *See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. Panitz,* 907 F.2d 1267, 1273 (1st Cir.1990).

The defendant accompanies his motion with an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 wherein he attacks the inaccuracies of the indictment, alleging that he never devised "a scheme to defraud" any entity, and that he never enriched himself as a result of the facts alleged in the indictment. He explains how he has suffered economic hardship in having paid over $700,000 of his own money because he is morally responsible for the mismanagement and losses incurred. Furthermore, other obligations of Bankers Finance in excess of $350,000 have been paid by him with personal funds.

The statement goes on to note that the Office of the Commissioner of Financial Institutions of Puerto Rico found no evidence of wrongdoing on his part in connection with mortgages unpaid by Bankers Finance. He notes further that no probable cause was found relating to charges brought in local court, which charges are connected to the same mortgages subject of the present indictment. Noting his disappointment at his attorney's becoming the target of a federal investigation, and his learning of this two weeks before the previously scheduled trial date on May 17, 1997, he notified his present attorneys that he authorized "going to trial." He was then informed that a plea agreement was being offered related to the former Ban-

co Nacional, of which he had been chairman of the board of directors. The agreement brought with it his qualifying for probation. The defendant was cautious because of his distrust of the United States Attorney since he had been told by his father-in-law that the United States Attorney had reneged on a similar agreement with Mariano Mier, former president of First Federal Savings Bank. The defendant goes on to discuss meetings with the United States Attorney and his understanding of what the agreement entailed, telling the truth and cooperating. He was sure that he would meet this requirement.

At the first debriefing, the defendant described criminal acts on the part of a former president of Banco Nacional, which acts were "corroborated" to him by two other people. He also related what another person had told him in relation to kickbacks paid to the former president by someone else. The defendant also related a title study he performed which resulted in suspicious findings. When asked about his knowledge of any money laundering schemes, the defendant related that he did not know but suggested that the agents inquire from a company engaged by Nacional to look into the background of a Dominican company dedicated to cashing checks. The defendant and his lawyers felt that this meeting had gone well. The government felt it had gone poorly. Four months later, a second debriefing was held. In that meeting, the defendant offered to explain the violations found by the F.D.I.C. at Nacional but the agent said that they were not interested in any "technical" violations at Nacional. The meeting lasted six hours. The defendant recounted the information he had previously provided and added sources of other information within the possession of the Office of the Comptroller of the Currency that would substantiate information provided by him. He later produced certain promised documents to the agent. After the second meeting, the defendant was not called again.

▮ In keeping with the agreement, the United States had obliged itself to file a motion based upon substantial assistance as the phrase is used in 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. The guidelines allow the court to reduce the sentence only if the United States files such a motion. If the motion is not filed, the court cannot act. The United States retains the sole discretion to determine if the assistance was substantial and thus must decide if the downward departure motion is warranted. The United States argues that since it has complete discretion in filing the motion, the refusal to file such a motion is reviewable only for unconstitutional motives, such as race, national origin, or religion, *citing United States v. Aderholt,* 87 F.3d 740, 742 (5th Cir.1996) and *United States v. García–Bonilla,* 11 F.3d 45, 46 (5th Cir.1993); *see Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The government stresses that it did not bargain away its discretion to file or not a motion for downward departure and that therefore, there can be no right protected under a due process claim. *See United States v. White,* 71 F.3d 920, 923–24 (D.C.Cir.1995). The decision to move, with few qualifications, is committed to the prosecutor's discretion. *United States v. Montañez,* 82 F.3d 520, 522 (1st Cir.1996); *Carey v. United States,* 50 F.3d 1097, 1101 (1st Cir.1995); *cf. United States v. Wrenn,* 66 F.3d 1, 3 (1st Cir.1995). None of those qualifications are present.

## EVIDENTIARY HEARING

▮ In the December 30, 1997 motion, the defendant seeks that the court hold an evidentiary hearing on the "constitutional matters aforementioned" and seeks further that the law enforcement agents who interviewed the defendant, as well as certain prosecutors, be present for examination by defense counsel. It is clear however that the defendant is not entitled as of right to an evidentiary hearing.

> [E]videntiary hearings on motions are the exception, not the rule. We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion. Thus, a party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment.

*United States v. Isom,* 85 F.3d 831, 838 (1st Cir.1996) (quoting *United States v. McGill,*

11 F.3d 223, 225 (1st Cir.1993)); *see United States v. Garcia,* 954 F.2d 12, 19 (1st Cir. 1992); *United States v. DeCologero,* 821 F.2d 39, 44 (1st Cir.1987). In this particular case, the immediate remedy sought is an evidentiary hearing, the inference being that the United States is obligated to move for a downward departure due to the defendant's substantial assistance, and that at some point, the defendant will request specific performance since there is no evidence before the court from which it may infer that the defendant wishes to withdraw his guilty plea. *See Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), *cited in United States v. Carrero,* 140 F.3d 327, 327–28 (1st Cir.1998). The defendant is required to make a substantial threshold showing that he is entitled to such a hearing. *Wade v. United States,* 504 U.S. at 186, 112 S.Ct. 1840; *United States v. Romsey,* 975 F.2d 556, 557–58 (8th Cir.1992). However, consideration having been given to the defendant's claim that he provided substantial assistance, he is yet not entitled to an evidentiary hearing, let alone to discovery on the matter. Indeed, he is not entitled to a remedy. *See Wade v. United States,* 504 U.S. at 186, 112 S.Ct. 1840; *United States v. Urbani,* 967 F.2d 106, 110–11 (5th Cir.1992). Not only has the defendant failed to direct the court's attention to an impermissible motive on the part of the government, such as race or religion, he has not shown that the government's refusal to file the motion is "not rationally related to any legitimate Government end." *Id.; United States v. Catalucci,* 36 F.3d 151, 153 (1st Cir.1994). Indeed, even if the court were to equate the defendant's argument that the prosecution's actions are arbitrary, with a claim that the government has acted in bad faith, the defendant would still be without a remedy, the reason being that the requisite threshold showing has not been made. There is simply no reason to think that live testimony or any other further inquiry would alter this conclusion. *Id.* at 154. Considering the proffer of the defendant as discussed above and below, the court finds that there are no reasonable grounds for it to exercise its discretion to conduct an evidentiary hearing.

## PROSECUTORIAL DISCRETION

▮ Plea agreements are construed in most respects according to principles of contract law. *See United States v. Carrero,* 140 F.3d at 328–29. In general terms, the government is obliged to respect the terms of a plea agreement, *United States v. Tilley,* 964 F.2d 66, 70 (1st Cir.1992), including a conditional promise to recommend a downward departure. *United States v. Garcia–Velilla,* 122 F.3d 1, 2 (1st Cir.1997). However, there is a body of law respecting the prosecutor's discretion in deciding to file a motion for downward departure based upon a defendant's substantial assistance and recognizing the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance. *United States v. La Guardia,* 902 F.2d 1010, 1015–16 (1st Cir.1990) (and cases cited therein). Furthermore, since the government has a strong interest in encouraging defendants to cooperate, responsible use of substantial assistance motions will doubtless promote such cooperation. *Id.* It is not difficult for the court to consider that the government, in refusing to file the motion, is recognizing its grave responsibility and mandate to enforce the laws, as well as its obligation to exercise its discretion responsibly, not generously. Thus, the defendant fails in his complaining of the government's refusal being "not rationally related to any legitimate Government end." *United States v. Catalucci,* 36 F.3d at 153. While the defendant argues that his right to due process has been violated, it has been held that there are no due process concerns when a defendant has not detrimentally relied on a government's offer. *See United States v. Papaleo,* 853 F.2d 16, 18–19 (1st Cir.1988). Except for disappointment and inconvenience, the defendant has not suffered detriment based upon his reliance on the government's offer and the expectancy of imprisonment is not caused by anything other than the charges to which the defendant has entered a plea of guilty. Again, one must be mindful that the government is in the best position to evaluate a defendant's possible cooperation. *See Wade v. United States,* 504 U.S. at 187, 112 S.Ct. 1840. In this case, the wording of the plea and cooper-

ation agreement clearly sustains the position of the United States that discretion to file the desired motion rests with the government. The agents and prosecutors were apparently not as impressed with the defendant's information as was the defendant. The outline of the proffered information which the government should arguably have received as substantial assistance could easily have been considered by the agents and prosecutors as having fallen short of their expectations. Largely hearsay statements surrounded by veiled hints at innocence, and information found in the hands of government agencies can reasonably fail to justify a governmental munificence. The court will not evaluate the information provided based upon what the government might have reasonably considered to be the defendant's meager showing. The exercise of the government's discretion to abstain from filing the requested motion under these circumstances neither requires nor invites the court to reach a level of constitutional inquiry, and the fact that, in the opinion of the defendant, the United States might have been better served by other agents and prosecutors is not a sufficient predicate for the court to enter the broad realm of prosecutorial discretion. *See United States v. Raineri*, 42 F.3d 36, 44 (1st Cir.1994), *cert. denied*, 515 U.S. 1126, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995).

In view of the above, the motion notifying constitutional violation and seeking an evidentiary hearing is **DENIED.** Said motion having been filed under seal, the Court hereby **ORDERS** that the same be **UNSEALED.** Sentence is hereby set for **June 5, 1998 at 9:30 a.m.**

**IT IS SO ORDERED.**